UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEETA JOSHI-TOPE,

                      Plaintiff(s),

           -against-

COLD SPRING HARBOR LABORATORY,
a New York organization, LINCOLN STEIN,
BRUCE STILLMAN, KATHERINE RAFTERY, and
HOLLIS CLINE, individually and as employees of
Cold Spring Harbor Laboratory, and IMRE VASTRIK,
and EWAN BIRNEY, individually and as employees of
European Bioinformatics Institute,
                      Defendant(s).
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 07-3346 (ERK) (WDW)

**WILLIAM D. WALL, United States Magistrate Judge:**

Before the undersigned, on referral from District Judge Korman, are two motions to dismiss. The first is a motion by Cold Spring Harbor Laboratory (CSHL), Dr. Lincoln Stein, Dr. Bruce Stillman, Ms. Katherine Raftery, and Dr. Hollis Cline (collectively, "the CSHL defendants"). DE[19, 20, 43]. The second is a motion by defendants Imre Vastrik and Ewan Birney (with Stein, the "Reactome Author defendants"). DE [24, 25, 44[1]]. The pro se plaintiff opposes both motions. DE [45, 46, 47] and DE [48, 49, 50]. For the reasons set forth herein, the undersigned recommends that all of the plaintiff's claims, against both the CSHL defendants and defendants Vastrik and Birney, with the exception of the Title VII claim against CSHL, be dismissed.

**BACKGROUND**

The pro se plaintiff, Geeta Joshi-Tope, filed her complaint on August 13, 2007, alleging

---

[1]In their memo of law in support, Vastrik and Birney note that in the interests of avoiding duplicative arguments, they incorporate by reference the brief in support of the motion to dismiss filed by the CSHL defendants.

various claims, discussed *infra*, against the defendants. DE[1]. Assorted motions, requests for extensions and one prior Report and Recommendation ensued. The plaintiff, a female, naturalized citizen of Indian origin, was employed by CSHL as the Editor-in-Chief for the Genome Knowledgebase project in October 2002. DE[1] at ¶6. The project on which Joshi-Tope worked was also called the Reactome project.

The plaintiff claims that when she was hired, she was told by defendant Stein that the job would last at least four years, and beyond that, as long as the project lasted. *Id.* Her position was terminated in May 2005. She claims that the firing was a wrongful breach of oral contract. The CSHL defendants assert that she was an at-will employee, without a contract, who was terminated because of her contentious interactions with coworkers and disruptive and argumentative behavior. *See* DE[20] at 1. The court need not determine the reasons for her termination on this motion to dismiss, but the oral contract claim is discussed *infra*.

On or about March 13, 2006 (erroneously stated as 2005 in the Complaint), Joshi-Tope filed a discrimination claim with the EEOC, which dismissed the charge and gave her a right to sue letter. DE[1] ¶7, ex. A. Only two of the claims in the complaint - Breach of Contract and Violation of Title VII - appear to arise from the firing and are alleged against the CSHL defendants. The other claims involve an article in the *Genome Biology* journal in March 2007, published by defendants Stein, Vastrik and Birney, along with others, listing the plaintiff as a co-author and indicating that was still affiliated with CSHL. Joshi-Tope alleges that her listing as co-author was done without her knowledge or consent. DE[1] at ¶26. She further alleges that the 2007 article used material from an article previously published in 2005 in the *Nucleic Acids Research* journal, which listed her as the lead author and Stein, Vastrik, Birney and others as co-

authors. The claims based on the 2007 article include a claim pursuant to the "Glass Ceiling Act of 1991," a claim of "fraudulent copyright notice," a "copyright violation" flowing from the "Publication Rights Policy" of the *Nucleic Acids Research* journal, defamation, and plagiarism. These claims are against the defendants in various combinations.

Defendant Dr. Lincoln Stein is the Principal Investigator of the Reactome project at CSHL, Dr. Stillman is the President and CEO of CSHL, Ms. Raftery is CSHL's Vice President of Human Resources, and Defendant Cline, formerly Director of Research at CSHL, is currently a full professor there. DE[20] at 2. During the time of the plaintiff's employment at CSHL, defendants Vastrik and Birney were employed by a research institute in the United Kingdom, the European Bioinformatics Institute ("EBI"), working jointly with CSHL on the Reactome Project.

The CSHL defendants argue that all of the claims save for the Title VII claim against them must be dismissed as a matter of law. Defendants Vastrik and Birney argue that all claims against them must be dismissed. The court now turns to those claims.

## DISCUSSION

**Standard For Motion To Dismiss**:

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*, 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in *Bell Atlantic* has not been

3

interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, *Bell Atlantic* holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).*"* *Williams v. Berkshire Fin. Grp. Inc.*, 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007)(quoting *Bell Atlantic Corp.*, 127 S. Ct. at 1959).

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. *Watts v. Services for the Underserved*, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 127 S. Ct. at 1974. And, the plaintiff must "provide the grounds upon which [her] claim rests through factual allegations sufficient 'to raise a right to relief above a speculative level.'" *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1965).

On a motion to dismiss under Rule 12(b)(6), pro se submissions such as the plaintiff's are to be construed liberally and held to less stringent standards than pleadings submitted by attorneys. *Clarke v. Flushing Manor Care Center,* 2003 WL 1338663 at *2 (S.D.N.Y. 2003) (citing *Verone v. Catskill Regional Off-Track Betting Corp.,* 10 F. Supp. 2d 372, 375 (S.D.N.Y. 1998)). "'However, the leniency accorded pro se litigants is not without limits, and all normal

rules of pleading are not absolutely suspended.'" *Id.* (quoting *Gil v. Vogilano,* 131 F. Supp. 2d 486, 491 (S.D.N.Y. 2001) (additional citations omitted)).

**Breach of Oral Contract Claim:**

The Plaintiff asserts a breach of oral contract claim against CSHL, alleging that Stein orally promised, during her job interview in October 2002, that she would be employed in the position for at least four years, with the possibility of a longer term. She had no written contract. *See* DE[1] ¶6. Her employment was terminated in less than three years, and she argues that the termination was a breach of the alleged contract. CSHL argues that the claim must be dismissed pursuant to New York's Statute of Frauds, and the court agrees. The Statute of Frauds requires contracts that cannot be performed within one year to be in writing in order to be enforceable. *See Guilbert v. Gardner,* 480 F.3d 140, 151 (2d Cir. 2007)("New York law provides that an agreement will not be recognized or enforceable if it is not in writing and 'subscribed by the party to be charged therewith' and if the agreement '[b]y its terms is not to be performed within one year from the making thereof.'" (quoting N.Y. Gen. Oblig. Law §5-701(a)(1)).

In opposition, Joshi-Tope appears to argue that New York law would not apply in this action, because it is in federal court and related to a Title VII claim. She alleges the creation of a hostile work environment by CSHL, and argues that "[u]nder conditions of hostile environment other statutes get suspended." DE[45] at 8. No, they don't. The allegation of a Title VII claim has no bearing on the application of the New York Statute of Frauds to Joshi-Tope's New York common law breach of contract claim, whether in state or in federal court. The alleged oral promise, assuming as we must that it was made, could not have been performed in one year and is thus, on its face, unenforceable. The breach of oral contract claim must be dismissed.

5

**The Title VII Claim:**

The CSHL defendants also argue that the Title VII claim, to the extent it is alleged against the individual CSHL defendants, must also be dismissed because there is no individual liability under Title VII. They are correct. "Individual defendants . . . may not be held personally liable under Title VII - only the actual employer may be held liable." *Clarke,* 2003 WL 1338663 at *2 (additional citations omitted). The plaintiff argues that Title VII defines "employer" as a "person or entity engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." DE[45] at 8. Stein, Raftery, Stillman and Cline are individually liable under Title VII, she argues, because each of them had supervisory authority over at least 15 people, including her. DE[45] at 8-9. The pro se plaintiff has misread the definition in Title VII. Her employer was CSHL, not the individuals who worked there with her, no matter how much authority they had. Their level of authority may be relevant to CSHL's liability, inasmuch as the question of whether their acts can be imputed to the employer may arise, but they are not personally liable under that statute. The plaintiff has pointed to no Second Circuit case that holds differently, and the undersigned knows of none.

The plaintiff also suggests that the individual CSHL defendants may be liable as aiders and abettors of discriminatory behavior pursuant to New York's Human Rights Law §296(6), which prohibits employment discrimination on various grounds, including national origin, the basis of Joshi-Tope's claim.[2] Section 296(6) provides that it is unlawful "for any person to aid,

---

[2]The plaintiff also argues that defendant Ewan Birney and his employer, EBI, "may be liable for aiding and abetting in the Title VII claims because they "accepted US Federal Funds from the US National Institutes of Health (NIH) and they are bound by the same legal standards as Defendant Stein and CSHL." DE[48] at 2. The plaintiff does not cite to any statute under

6

abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law §296(6). Here, the possibility that a section 296(6) claim might have been alleged has no bearing on the Title VII claim against the individual defendants. Thus, the undersigned recommends that the Title VII claims against the individual defendants be dismissed.

**Glass Ceiling Act Claim**

The Complaint alleges that defendant Stein favored Caucasians over herself, because she is Indian, and took "credit, honors and growth opportunities" away from her, in violation of the Glass Ceiling Act of 1991, Title II. DE[1] ¶25. The CSHL defendants argue that the Glass Ceiling Act established a Commission to study barriers to the advancement of women and minorities in the workplace and set up an annual award for excellence in promoting a more diverse work force at the management level. DE[20] at 9. The Act does not create a private right of action, however, and any claim pursuant to the Act must be dismissed. *See Lovoi v. Alitalia Airlines,* 2001 WL 1287113 at *6 (E.D. La. Oct. 23, 2001)). The plaintiff's argument that discovery will prove that she has hit a glass ceiling is irrelevant, inasmuch as there is no cause of action for private parties such as herself under the Act. *See* DE[45] at 14.

**Fraudulent Copyright Claim**

The plaintiff next claims that the Reactome Authors engaged in "fraudulent copyright notice" on "two counts." DE[1] ¶26. She alleges first that the Reactome Authors improperly

---

which such liability might exist, nor does she explain her allegations about the legal implications of accepting NIH funds. The court takes no position on these statements in this Report, inasmuch as they do not in any way change the conclusion that there is no viable Title VII claim set forth against any of the individual defendants.

certified to the journal that they had authority to enter into a "copyright and licence agreement," even though Joshi-Tope, who was listed as a co-author, did not know about or consent to that listing. DE[1] ¶¶26 & 27. Second, she asserts that Stein wrongfully told the journal that the article contained nothing unlawful, when the article actually contained previously published material, which amounted to unlawful plagiarism. DE[1] ¶28. Even accepting these allegations as factually precise, the defendants argue, this claim must be dismissed because there is no private cause of action for fraudulent copyright notice. DE[20] at 8; DE[25] at 3. "Fraudulent copyright noticing is a criminal offense pursuant to 17 U.S.C. §506(c) for which there is no private cause of action." *Kwan v. Schlein,* 441 F. Supp. 2d 491, 506 (S.D.N.Y. 2006) (citing *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 37 n.10 (2d Cir. 1982) (same)). The plaintiff herself acknowledges that pursuant to federal law, a fraudulent copyright notice is a criminal act. DE[45] at 16; DE[48] at 6. As a private citizen, Ms. Joshi-Tope has no right to bring a criminal claim against a defendant in a civil lawsuit.[3] Thus, any claim of fraudulent copyright notice must be dismissed.

**Copyright Violation Claim**

The plaintiff captions her next claim as one for "Copyright Violation." The claim states that the Reactome Authors "violated the Publication Rights Policy of the journal 'Nucleic Acids research', willfully and with malicious intent to take credit away for this paper from Plaintiff.

---

[3]The court notes numerous references by the pro se plaintiff to crimes and criminal activity in her papers in opposition to the motions. *See, e.g.,* DE[45] at 4, 16, 17, 20; DE[48] at 3, 6, 7, 10. She cannot, as a plaintiff in a civil action, bring criminal claims against any defendants, and she is urged to educate herself as to the distinctions between civil and criminal claims.

March 16, 2007." DE[1] ¶29. The defendants argue that this claim should be dismissed for failure to state a claim. They posit that the plaintiff "seems to be claiming that the Reactome Authors violated an internal policy of the *Nucleic Acids Research* journal by 'tak[ing] credit away from plaintiff when they allegedly failed to cite the *Nucleic Acids Research* article for which she was the lead author in the subsequent *Genome Biology* article." DE[20] at 10; DE 25 at 3-4. The plaintiff does not dispute this interpretation in her opposition, but does challenge the legal arguments that the defendants make. See DE[45] at 16-17.

The defendants argue that there can be no private cause of action to recover damages upon a supposed violation of a provision in the internal Publication Rights Policy of a private research journal. *See* DE[20] at 10 (citing *cf. Hoetger & Co. v. Ascencio,* 572 F. Supp. 814, 822 (E.D. Mich. 1983); *Weinraub v. Glen Rauch Sec., Inc.,* 399 F. Supp. 2d 454, 462 (S.D.N.Y. 2005); *Davis v. United States,* 495 U.S. 472, 486 (1990); *see also* DE[25] at 3-4). The undersigned agrees and recommends that to the extent the cause of action is based on a failure to follow the journal's internal policies, it must be dismissed.

The plaintiff alleges, however, that the failure to cite the 2005 article also amounts to violation of the Copyright Law, "punishable by a $2500 fine for each defendant." DE[45] at 17; DE[48] at 7. Vastrik and Birney argue, as a threshold matter, that because copyright registration is a jurisdictional prerequisite to an action for infringement and Joshi-Tope does not plead copyright registration in her Complaint, any copyright claim must be dismissed on that ground. DE[25] at 3 (citing *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub'g., Inc.,* 49 F. Supp. 2d 673, 677 (S.D.N.Y. 1999); *Techniques, Inc. v. Rohn,* 592 F. Supp. 1195, 1197 (S.D.N.Y. 1984) (failure to plead copyright registration renders a complaint for infringement "defective and

subject to dismissal")). In her papers in opposition, the plaintiff does not address this issue, and the court finds that it does provide a basis for dismissal of the claim, distinct from the other grounds for dismissal set forth *infra*.

The defendants further argue that even if the claim is construed as one of copyright infringement, it must fail, because the Reactome Authors and the plaintiff were co-authors of the *Nucleic Acids Research* article and it is a basic tenet of copyright law that, in a joint work, "each author 'automatically acquires an undivided ownership in the entire work' including any portion of it." DE[20] at 11 (quoting *Weissmann v. Freeman,* 868 F.2d 1313, 1318 (2d Cir. 1989)(internal citations omitted); *see also* DE[25] at 3). Thus, "an action for infringement between joint owners will not lie because an individual cannot infringe his own copyright." *Id.* By definition, the defendants argue, "[i]nfringement is the violation of an owner's copyright interest by a non-owner . . . [and it] is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement." *Id.* (quoting *Cortner v. Israel,* 732 F.2d 267, 271 (2d Cir. 1984) (internal citations omitted). Because the Reactome Authors and the plaintiff were co-authors of the *Nucleic Acids Research* article, the defendants continue, all of them automatically acquired an undivided ownership in the article's content that they were free to use in subsequent articles, license and reproduce, or use to create derivative works. DE[20] at 11; DE[25] at 3.

The plaintiff acknowledges that in a joint work, each author automatically acquires undivided ownership of the entire work and that any coauthor is free to use the work in subsequent articles, license and reproduce, or use to create derivative works. DE[45] at 16. But,

10

she continues, there is a crucial requirement that the original work be properly cited, a requirement that was not met here. *Id.* That contention, the defendants counter, is irrelevant in light of the well-established principle that "the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement." *Cortner,* 732 F.2d at 271. The court agrees that the plaintiff cannot bring a claim of copyright infringement against her copyright co-owners and that the claim must thus be dismissed.

**Defamation Claim**

The plaintiff claims that defendant Stein's listing of her as a co-author affiliated with CSHL, when in fact she had been terminated from employment there two years earlier, was false, hurt her chances for other employment, and left her subject to ridicule in the scientific community because *Genome Biology* is a substandard publication. DE[1] ¶30. This paragraph, captioned "DEFAMATION - TORT- COMMON LAW," presumably intends to set forth a claim for defamation. The defendants argue that the claim must be denied, because even accepting its falsity in March 2007, it was not, as a matter of law, defamatory.

"To state a claim for defamation under New York law, 'the claimant must allege facts sufficient to support a finding of a published statement concerning the claimant that is both false and defamatory.'" *Posner v. Spring/United Management Co.,* 478 F. Supp. 2d 550, 560 (S.D.N.Y. 2007) (quoting *Cytyc Corp. v. Neuromedical Sys., Inc.,* 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998)). A successful claimant must ultimately prove five elements: "'(1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault . . . ; (4) falsity of the defamatory statement; and (5) injury to

plaintiff'." *Posner,* 478 F. Supp. 2d at 560 (quoting *Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 145 (2d Cir. 2001)). "Whether a statement is capable of a defamatory meaning is a threshold question of law to be resolved by the court. [internal citations omitted] If a statement is not capable of a defamatory meaning, then, obviously, [a] motion to dismiss should be granted." *Weinstein v. Friedman,* 1996 WL 137313 at *10 (S.D.N.Y. Mar. 26, 1996)(additional citations omitted).

Here, the defendants argue, the only false part of the allegedly defamatory statement was the representation in the byline that Joshi-Tope was still affiliated with CSHL. Such a representation, they state, was not, on its face, defamatory. "A statement that is merely unpleasant, offensive or embarrassing, or that hurts plaintiff's feelings, is not necessarily defamatory." *Mark v. Brookdale Univ. Hosp.,* 2005 WL 1521185 at *22 (E.D.N.Y. June 22, 2005). Instead, a statement will be construed as defamatory only when it "exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society." *Id.* at *23 (citing *Celle v. Filipino Reporter Enters., Inc.* 209 F.3d 163, 177 (2d Cir. 2000)). Stating that the plaintiff was affiliated with CSHL, the defendants argue, comes nowhere near rising to that level.

The plaintiff argues that the five elements of defamation need not be established at the complaint stage. DE[45] at 18; DE[48] at 8. She is correct that she need not prove the five elements at this time. The allegedly defamatory statement must, however, be capable of a defamatory meaning, and the statement that Joshi-Tope was still affiliated with CSHL in 2007

12

when she was not does not have that potential. The fact that it was incorrect and that the plaintiff does not want people to think she was still working at CSHL in 2007 is not enough to expose Joshi-Tope to public hatred, shame, obloquy contumely, odium contempt, ridicule, aversion, ostracism, degradation or disgrace or to cause right thinking people to have an evil opinion of her. The defamation claim should be dismissed.

**Plagiarism Claim**

The plaintiff's final claim is one for plagiarism. The defendants argue that any "plagiarism" claim is preempted by the Copyright Act. *See* DE[20] at 20-22 and cases cited therein; DE[25] at 5. The court agrees. Moreover, to the extent that the claim is construed as one sounding in copyright infringement, it must be dismissed for the reasons set forth *supra*. The plaintiff, in her memo of law in opposition, states that, "[a]ssuming the previous cases have ruled that this crime is not directly actionable, Plaintiff respectfully requests to reserve the right to add the Journal and/or publisher, and then that the party can avail of action against the charged defendants on this count." DE[45] at 20; DE[48] at 10. The undersigned takes no position on the plaintiff's "reservation of rights[4]," but recommends that the plagiarism claim be dismissed as a matter of law.

For all of the foregoing reasons, the court recommends that all of the plaintiff's claims, against both the CSHL defendants and defendants Vastrik and Birney, with the exception of the Title VII claim against CSHL, be dismissed.

---

[4]The defendant assumes that the plaintiff seeks to add other plaintiffs, but the court makes no assumptions about her intended meaning.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the defendants by electronic filing on the date below, and to the plaintiff by fax and mail. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 10 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
April 14, 2008

      s/ William D. Wall
      WILLIAM D. WALL
      United States Magistrate Judge